IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA STROM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 7051 |
| | ) | |
| STROM CLOSURES, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff / Counter-Defendant Victoria Strom's ("Strom") motion to dismiss the counterclaims and motion to strike affirmative defenses. For the reasons stated below, we grant the motion to dismiss and grant the motion to strike.

## **BACKGROUND**

Strom alleges that she was employed by Defendant Strom Closures, Inc. ("SCI"). Defendants Terry Barnett ("T. Barnett") and David Barnett are allegedly principal officers of SCI and are involved in the day-to-day operations of SCI. Strom contends that SCI failed to pay her minimum wages for all the hours that she worked. Strom includes in her complaint a claim alleging violations of 29 U.S.C. § 206 of the

1

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (Count I), a claim alleging a violation of 820 ILCS 105/4 of the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* (Count II), and a claim alleging a violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* (Count III).

Defendants have also filed amended counterclaims in this case. Defendants assert that T. Barnett is the assignee of United States patent number 5, 819, 474 ("474 Patent"). Defendants state in their amended counterclaims that in 2002, Barnett and SCI brought an action in federal court against Strom, Counter-Defendant Willard Strom ("W. Strom"), and Counter-Defendant C & S Manufacturing Co. ("C&S") for patent infringement and other related claims ("Infringement Action") (Case No. 02 C 3747). According to Defendants, on June 4, 2003, the court in the Infringement Action issued a ruling finding that Defendants had infringed upon the 974 Patent by offering a product referred to as the "ZIPPER product" ("ZIPPER Product"). (A. CC. Par. 10). The court also allegedly estopped Strom, W. Strom, and C&S from denying that they had infringed the 474 Patent. On August 15, 2003, the court allegedly enjoined Counter-Defendants from further manufacture or sale of the ZIPPER Product.

Defendants contend that despite the injunction, Counter-Defendants began manufacturing and selling a new product referred to as the "PROZIP" product ("PROZIP Product"). On September 21, 2004, the district court allegedly entered an order enjoining Counter-Defendants from further manufacture or sale of the PROZIP Product and ordered them to recall the PROZIP Product from the marketplace.

Defendants contend that on April 6, 2005, they entered into a settlement agreement ("Settlement Agreement") with the Counter-Defendants, under which SCI was given sole control of the marketing, distribution, and sales of the ZIPPER Product and PROZIP Product. Under the terms of the Settlement Agreement, Counter-Defendants were also required to: (1) transfer the existing inventory of the products and raw materials and packaging for the products to SCI, (2) assign all rights to a zipper gluing machine and other machinery to SCI, (3) transfer all sales account information, data, and contact information to SCI, (4) forward all orders for the ZIPPER Product and PROZIP Product to SCI, (5) use their best efforts to assist SCI in the transfer of sales accounts, and (6) instruct all existing customers that all future orders and payments were to be sent to SCI. Defendants assert that Counter-Defendants failed to honor any of the above obligations under the Settlement Agreement and continue to engage in the sale of the prohibited products. Defendants also contend that on several occasions Counter-Defendants accepted and converted payments that they received for orders that were actually filled by SCI. In addition, parties allegedly acting in concert with Counter-Defendants have started selling a zipper product referred to as the GENZIP product ("GENZIP companies") that infringes on the 474 Patent.

Defendants include in their amended counterclaims a breach of contract claim (Count I), a conversion claim (Count II), an interference with contractual relations claim (Count III), an intentional interference with prospective economic advantage claim (Count IV), an unfair competition claim (Count V), a deceptive business

practices claim (Count VI), and a patent infringement claim (Count VII). Strom moves to dismiss all counter-claims and moves to strike Defendants' affirmative defenses.

**LEGAL STANDARD**

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). In order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007)). Under current notice pleading standard in federal courts a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit

4

of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "'provide the defendant with at least minimal notice of the claim,'" *Kyle*, 144 F.3d at 455 (quoting *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995)), and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.,* 322 F.3d 942, 946 (7th Cir. 2003). If the concern of the court or party challenging subject matter jurisdiction is that "subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule 12(b)(1) would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *Id.; see also Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir. 1995)(stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept

as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"). However, if the complaint appears on its face to indicate that the court has subject matter jurisdiction, "but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd.,* 322 F.3d at 946 (emphasis in original). For the purpose of determining subject matter jurisdiction, the court "'may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Ezekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. Federal Deposit Insurance Corp.,* 999 F.2d 188, 191 (7th Cir. 1993)). The burden of proof for a Rule 12(b)(1) motion is "on the party asserting jurisdiction." *United Phosphorus, Ltd.,* 322 F.3d at 946.

**DISCUSSION**

I. Motion to Dismiss

Strom argues that this court lacks subject matter jurisdiction over the Counter-claims in the instant action.

A. Jurisdiction Over Patent-Related Cases and Count VII

Strom contends that the counterclaims, particularly Count VII, do not fall within this court's jurisdiction pursuant to 28 U.S.C. § 1338(a) ("Section 1338(a)"). Section 1338(a) provides that "[t]he district courts shall have original jurisdiction of

any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338(a). Defendants make clear that the continued infringement of the 474 Patent that underlies the counterclaims was an issue that was resolved in the Settlement Agreement. (A. CC. Par. 14); (Ans. Mot. Dis. 2). Defendants specifically contend that under the terms of the Settlement Agreement, Strom and the other Counter-Defendants were obligated to "refrain from engaging in any conduct, or acting in concert or participation with any third parties, that would infringe the" 474 Patent. (Ans. Mot. Dis. 3). The allegations in the counterclaims that Counter-Defendants have continued to engage in activities that infringe upon the 474 Patent and have acted in concert with others that are doing so squarely fall within the scope of the Settlement Agreement. If, as Defendants contend, Strom and the other parties to the Settlement Agreement are not honoring their obligations under the agreement, the proper course of action is not to bring a new action to sue for infringement of the 474 Patent. Defendants' remedy for a breach of the Settlement Agreement lies in a suit for the enforcement of the terms of the Settlement Agreement. Such an action would be dealt with as a state law breach of contract action. The Seventh Circuit has stated that when a suit is dismissed with prejudice, as was the Infringement Action, the case "is gone" and the district court cannot reopen the case to revisit whether the parties honored their obligations under a settlement agreement. *See Dupuy v. McEwen*, 495 F.3d 807, 809 (7th Cir. 2007); *Dillard v. Starcon Intern., Inc.*, 483 F.3d 502, 506 (7th Cir. 2007)(stating that in *Kokkonen v. Guardian Life Insurance Co.,* 511 U.S. 375, 380-

82 (1994) the Supreme Court "established that a settlement of a federal claim is enforced 'just like any other contract' under the state law of contracts, 'unless it is embodied in a consent decree or some other judicial order or unless jurisdiction to enforce the agreement is retained'")(quoting in part *Lynch, Inc. v. SamataMason Inc.,* 279 F.3d 487, 490 (7th Cir. 2002); (02 C 3747 6/3/05 OR). In addition, although the court in the Infringement Action included in its dismissal order a reference to "retaining jurisdiction for the purpose of enforcing the settlement agreement," (02 C 3747 6/3/05 OR), the Seventh Circuit has indicated that such a statement is insufficient to confer jurisdiction on the court after the dismissal of the case. *See Dupuy*, 495 F.3d at 809 (stating that the court previously "ruled, in reliance on *Kokkonen* . . . that when a suit is dismissed with prejudice, it is gone, and the district court cannot adjudicate disputes arising out of the settlement that led to the dismissal merely by stating that it is retaining jurisdiction"). Thus, Defendants have not shown that we have jurisdiction over the counterclaims pursuant to Section 1338(a). In addition, Defendants improperly attempt to plead a claim for patent infringement in Count VII, when Defendants' own allegations make clear that the dispute at issue is merely a continuation of the dispute in the Infringement Action, which was resolved in the Settlement Agreement.

  B.  Diversity Jurisdiction

  Strom argues that this court does not have diversity jurisdiction over the state law claims in the counterclaims, including the breach of contract claim related to the

8

Settlement Agreement. Pursuant to 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States. . . ." 28 U.S.C. § 1332(a). Defendants do not indicate in the jurisdictional statement of their counterclaims that this court has diversity jurisdiction over the counterclaims. (A. CC. Par. 6). Defendants concede that SCI is an Illinois corporation with its principal place of business in Illinois, which renders it a citizen of Illinois. (A. CC. Par. 1); 28 U.S.C. § 1332(c)(1). Defendants also acknowledge that Strom is a resident of Illinois and fail to provide any evidence that would dispute Strom's contention that she is a citizen of Illinois. (A. CC. Par. 4). Thus, Defendants have failed to show that we have diversity subject matter jurisdiction over the counterclaims.

### C. Supplemental Jurisdiction

Strom also contends that this court does not have supplemental jurisdiction over the counterclaims. Pursuant to 28 U.S.C. § 1367, wither certain exceptions, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Two claims are deemed to be a "part of the same case or controversy if they 'derive from a common nucleus of operative facts,'" and "[a] loose factual

connection between the claims is generally sufficient.'" *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007)(quoting in part *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)).

### 1. Factual Nexus Between Claims

Strom argues that there is an insufficient factual nexus between the claims in the complaint and those in the counterclaims that would enable the court to exercise supplemental jurisdiction over the counterclaims. We agree. The counterclaims do not even meet the permissive standard that would apply to claims that are loosely related to those in the complaint. Strom is suing the Defendants in the instant action merely in regard to the payment of minimum wages during her employment. Defendants are seeking to insert into this case an assortment of issues relating to patent infringement, prior settlement agreements, conversion, interference with contractual relations, intentional interference with prospective economic advantage, unfair competition, and deceptive business practices. Defendants have failed to show that such issues are in any way related to the payment of minimum wages. *See Channell v. Citicorp Nat. Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996)(indicating that there must be some factual connection between the main claims and supplemental claims).

Defendants argue that the claims in the complaint and the counterclaims all revolve around Strom's "employment relationship." (Ans. Mot. Dis. 7). Defendants

contend that Strom was supposed to begin working for SCI under the terms of the Settlement Agreement and that the work for which she seeks minimum wages was a subject of the Settlement Agreement. However, whether Strom actually performed work for SCI and whether she is deemed an employee under the law and entitled to minimum wages involves factual and legal issues that are separate from whether SCI was obligated to hire Strom under the terms of the Settlement Agreement. Thus, we disagree with Defendants' contention that the obligations of the Settlement Agreement are "inextricably intertwined" with the issues in this case. (Ans. Mot. Dis. 7).

The allegations in the counterclaims also reach far beyond the employment relationship that Strom had with SCI. The counterclaims are based upon a history of litigation between Defendants and Strom and parties that are not parties in this case, such as W. Strom and C&S. The counterclaims place at issue whether any of the Counter-Defendants adequately executed tasks such as transferring the existing inventory of the products and raw materials and packaging for the products to SCI, assigning all rights to a zipper gluing machine to SCI, and transferring all sales account information and data to SCI. The counterclaims also place at issue the operations of other corporations such as C&S and the GENZIP companies, which are not connected to Strom's employment at SCI.

We are not persuaded by Defendants' argument that all matters between them are somehow tied to their initial dispute at issue in the Infringement Action and

11

resolved in the Settlement Agreement and are therefore sufficiently connected to bring in one case. Under such an approach, Defendants could bring any claims against Strom regardless of their connection solely on the basis that Strom's alleged misconduct is the result of bad feelings or some sequence of events that somehow leads back to the infringement action. Supplemental jurisdiction is not so broad, and the considerations of efficiency and judicial economy would not be promoted by such an approach. Thus, we conclude that we lack supplemental jurisdiction over the counterclaims.

2. Discretion to Decline to Exercise Supplemental Jurisdiction

In addition, even if we could exercise supplemental jurisdiction over the counterclaims, we have discretion to decline to exercise such jurisdiction. 28 U.S.C. § 1367(c). A district court has discretion to "decline to exercise supplemental jurisdiction over a claim" in instances such as when "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.* In this case, the counterclaims over which we do not have original jurisdiction clearly predominate over the straightforward minimum wage claims presented in the complaint. In addition, we have compelling reason to decline to exercise supplemental jurisdiction over the counterclaims. Defendants are attempting through the filing of the counterclaims to transform the instant action

from a relatively straightforward minimum wage action into a complex action concerning matters such as the 474 Patent, the parties' prior litigation history, the Settlement Agreement, and issues concerning the operations of businesses not at issue in the complaint. Defendants have not offered sufficient justification for bringing such issues into the instant action. Judicial economy will not be served by incorporating such claims into the instant action. The mere fact that some of the parties in the instant action were parties in the Infringement Action is not sufficient justification to bring the counterclaim issues into this action. Supplemental jurisdiction was not provided to the courts to enable a party to use one case as a clearinghouse for all legal matters that the party wishes to resolve against another party. *Channell*, 89 F.3d at 385; *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)(explaining rational behind 28 U.S.C.§ 1367). If Defendants desire to pursue the unrelated claims of the counterclaims against Counter-Defendants, Defendants should do so in a separate action. Thus, even if we could exercise supplemental jurisdiction over the counterclaims, we would decline to exercise such jurisdiction as a matter of discretion. Therefore, based on the above, we lack subject matter jurisdiction over the counterclaims and we grant Strom's motion to dismiss the counterclaims.

II. Motion to Strike

Strom argues that the affirmative defenses pled by Defendants are improper. Defendants pled five affirmative defenses in their answer to the complaint. Pursuant

to Federal Rule of Civil Procedure Rule 12(f) "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Defendants contend in affirmative defenses 1 and 4 that SCI was only obligated to employ Strom under the terms of the Settlement Agreement and she cannot insist on performance by Defendants since Strom did not fulfill her obligations under the Settlement Agreement. (Aff. D. 1, 4). Defendants also argue in affirmative defense 5 that under the terms of the Settlement Agreement, Strom merely performed work for SCI as a "litigant" rather than as an "employee." (Aff. D. 5). Defendants also include in affirmative defenses 2 and 3 the defenses of unclean hands and laches as affirmative defenses (Aff. D. 2, 3).

Strom argues that all five of the affirmative defenses should be stricken since Defendants have not pled them with sufficient specificity. Affirmative defenses are deemed pleadings and a defendant must plead such defenses, as with any pleading, with sufficient specificity. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989)(stating that "[a]ffirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure," which require that the "defenses must set forth a 'short and plain statement,' . . . of the defense")(quoting Fed. R. Civ. P. 8(a)). Strom contends that the affirmative defenses pled by Defendants "merely state legal conclusions without any supporting statements of fact." (Mot. Str. 8). Strom is incorrect as to affirmative defenses 1, 4, and 5, which include factual details beyond mere legal conclusions. (Ans. 11). Strom argues that affirmative defenses number 1, 4, and 5 relate to the

14

Settlement Agreement and therefore are improper. We agree that affirmative defenses 1, 4, and 5, relate to the Settlement Agreement and pursuant to our earlier discussion we find that they are improper. Therefore, we strike affirmative defenses 1, 4, and 5. Strom also correctly points out that affirmative defenses 2 and 3 contain nothing more than conclusory references to the equitable defenses of unclean hands and laches. Therefore, we grant the motion to strike affirmative defenses 2 and 3.

## CONCLUSION

Based on the foregoing analysis, we grant Strom's motion to dismiss the counterclaims. We also grant Strom's motion to strike all of the Defendants' affirmative defenses.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 20, 2008